## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEICHA GREENIDGE and RYAN P. BILLEY, H/W *on behalf of themselves and all others similarly situated*,<br><br>        Plaintiffs,<br><br>    v.<br><br>HOMETAP EQUITY PARTNERS, LLC and HOMETAP INVESTMENT PARTNERS III SPV,<br><br>            Defendants. | Case No. 3:26-cv-01431 (GC)(RLS)<br><br>**Motion Date: July 20, 2026** |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Philip A. Goldstein
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, NY 10020-1104
Phone: (212) 548-2167
Email: pagoldstein@mcguirewoods.com

*Attorney for Defendants Hometap Equity Partners, LLC and
Hometap Investment Partners III SPV, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

BACKGROUND .................................................................................................3

I.    Plaintiffs Enter into the Option Purchase Agreement with Hometap .............3

II.   The Option Purchase Agreement Contains Arbitration Agreement and Delegation Provisions.................................................................................6

III.  Despite the Arbitration Agreement, Plaintiffs Filed a Putative Class Action Lawsuit Against Hometap ...............................................................8

LEGAL STANDARDS .......................................................................................8

ARGUMENT ......................................................................................................9

I.    The Arbitrator Must Decide Any Threshold Issues of Arbitrability .............10

    A.   Plaintiffs Cannot Invoke TILA to Bypass the Delegation Provisions ...........................................................................................11

    B.   Plaintiffs' State-Law Challenges Do Not Overcome the Delegation Provisions .......................................................................14

II.   Alternatively, if the Court Reaches Threshold Arbitrability Issues, No Valid Ground for Avoiding Arbitration Exists...............................................15

    A.   This Dispute Falls Within the Scope of the Arbitration Agreement...15

    B.   TILA Does Not Apply to the Option Purchase Agreement ................16

        1.   The Option Purchase Agreement Does Not Extend Credit ......16

        2.   The Option Purchase Agreement is an Option Contract and an Investment Plan ................................................................22

    C.   The Arbitration Agreement is Not Unclear or Unconscionable .........25

III.  The Court Should Stay Proceedings Pending Resolution of the Motion to Compel Arbitration.................................................................................26

CONCLUSION ...................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Actelion Pharms. Ltd. v. Apotex Inc.,*
No. 12-cv-5743, 2013 WL 5524078 (D.N.J. Sept. 6, 2013) ..............................29

*Akishev v. Kapustin*,
23 F. Supp. 3d 440 (D.N.J. 2014)...................................................................27

*Anfibio v. Optio Sols. LLC,*
No. 20-cv-11146, 2020 WL 8483808 (D.N.J. Dec. 30, 2020) ..........................28

*Baskin v. EK Real Est. Servs., NY, LLC,*
No. 21-cv-727, 2022 WL 17742738 (E.D. Tex. Sept. 14, 2022) ......................13

*Bd. of Trs. of Trucking Emps. of N.J. Welfare Fund, Inc.–Pension Fund v. Centra*, 983 F.2d 495 (3d Cir. 1992).....................................................23

*Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO,*
544 F.2d 1207 (3d Cir. 1976) ..........................................................................26

*Blueprint Cap. Advisors, LLC v. Div. of Inv.*,
No. 23-1116, 2023 WL 8866554 (3d Cir. Dec. 22, 2023) ................................14

*Burress v. Freedom Mortg. Corp.*,
No. 20-15242, 2021 WL 2661254 (D.N.J. May 26, 2021) ..........................27, 28

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,*
809 F.3d 746 (3d Cir. 2016) ............................................................................14

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024)...................................................................................11, 13

*Commonwealth v. Hometap Equity Partners, LLC,*
No. 2584CV00469, 2025 WL 2468564 (Mass. Super. Ct. Aug. 21, 2025) ...............................................................................................................21

*Cornelius v. CVS Pharmacy Inc.*,
133 F.4th 240 (3d Cir. 2025) ...........................................................................16

*Foster v. Equitykey Real Est. Invs. L.P.*,
   No. 17-cv-67, 2017 WL 1862527 (N.D. Cal. May 9, 2017) ..............................22

*Gov't Emps. Ins. Co. v. Mian*,
   No. 22-cv-00233 (D.N.J. Sept. 18, 2023), ECF No. 225 ..................................28

*Gov't Emps. Ins. Co. v. Mian*,
   No. 22-cv-233, 2024 WL 2057294 (D.N.J. May 8, 2024) ................................28

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)................................................................................10, 12

*James v. Glob. TelLink Corp.*,
   852 F.3d 262 (3d Cir. 2017) .............................................................................10

*Klepper v. SLI, Inc.*,
   45 F. App'x 136 (3d Cir. 2002) ........................................................................30

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)..........................................................................................26

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)..........................................................................................22

*Mancuso v. MDG USA, Inc.*,
   No. 23-1963, 2024 WL 1230149 (3d Cir. Mar. 22, 2024) ................................26

*Muskal v. Point*,
   CV 2025-024855 (Ariz. Super. Ct. Dec. 17, 2025), Dkt. 5 .........................21, 22

*MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit
   Funds*, 974 F.3d 386 (3d Cir. 2020) ...................................................................9

*Olsen v. Unison Agreement Corp.*,
   No. 22-cv-1859, 2023 WL 4492346 (W.D. Wash. June 27, 2023)....................13

*Olson v. Unison Agreement Corp.*,
   No. 23-2835, 2025 WL 2254522 (9th Cir. Aug. 7, 2025)................................21

*Persinger v. Sw. Credit Sys., L.P.*,
   20 F.4th 1184 (7th Cir. 2021) ...........................................................................17

*Riethman v. Berry*,
    287 F.3d 274 (3d Cir. 2002) ...............................................................17

*Sitzman v. EK Real Est. Servs. of NY LLC*,
    No. 21-cv-2666, 2022 WL 17853214 (N.D. Tex. Dec. 21, 2022) ....................13

*Veneziani v. Unison Agreement Corp.*,
    No. 22-cv-1789, 2023 WL 4201961 (W.D. Wash. June 27, 2023)....................13

*Young v. Experian Info. Sols., Inc.*,
    119 F.4th 314 (3d Cir. 2024) ...........................................................9, 10

**Statutes**

9 U.S.C. § 3 ...............................................................................8, 26, 29, 30

9 U.S.C. § 4 ..............................................................................................8

15 U.S.C. § 1602(dd)(5) ........................................................................16, 20

15 U.S.C. § 1639c(e)(1) .....................................................................11, 12, 16

Act of Aug. 9, 2024, No. 103-1015, 2024 Ill. Laws ..............................................24

Act of May 8, 2023, ch. 568, 2023 Md. Laws ......................................................24

Public Act No. 25-115, 2025 Conn. Acts (Reg. Sess.)...........................................24

Public Act No. 21-138, 2021 Conn. Acts (Reg. Sess.)......................................24, 25

**Other Authorities**

12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(vii) ..................................22

12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(viii)............................22, 24

Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation
    Procedures 14 (2022),
    https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-
    rules-mediation-procedures.pdf (last accessed June 26, 2026) ........................7, 8

Controversy, BLACK'S LAW DICTIONARY (4th ed. 1968) .......................................12

Debt, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) ......................17

iv

Loan, BLACK'S LAW DICTIONARY (4th ed. 1968)......................................................17

Owe, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) ......................17

Restatement (Second) of Contracts § 25 & cmt. a..................................................22

Defendants Hometap Equity Partners, LLC and Hometap Investment Partners III SPV, LLC (collectively, "Hometap") respectfully move this Court for an order: (1) compelling Plaintiffs to arbitrate their claims on an individual basis; (2) staying this action pending resolution of the arbitration; and (3) staying all proceedings pending the Court's ruling on the motion to compel arbitration.

## INTRODUCTION

This action concerns an Option Purchase Agreement that Plaintiffs Keicha Greenidge and Ryan P. Billey entered into with Hometap (the "Agreement"). Under that Agreement, Hometap purchased the right—an option—to later acquire an ownership interest in Plaintiffs' New Jersey home. To purchase that option, Hometap paid Plaintiffs an initial investment amount of approximately $100,000. The Agreement did not obligate Plaintiffs to repay that amount. Instead, if Hometap exercised its option by paying an additional sum, or if Plaintiffs repurchased the option, Hometap would receive the value of its ownership interest in the property.

Trying to avoid the Agreement's binding arbitration provisions, Plaintiffs mischaracterize the Agreement as a residential mortgage loan subject to the Truth in Lending Act (TILA). This Court should reject that effort and send this action to arbitration.

To start, the parties' dispute over whether the Agreement is a residential mortgage loan—and thus whether TILA precludes arbitration—is itself subject to

1

arbitration. The Agreement contains clear and unmistakable provisions that delegate threshold arbitrability issues to an arbitrator, rather than a court. Under those binding provisions Plaintiffs contracted for, the threshold question of whether the Agreement is an option contract or a residential mortgage loan—and therefore the question of TILA's applicability—is one for the arbitrator to resolve.

But even if this Court could look past the delegation provisions, TILA does not apply. The Agreement's plain terms make it an option contract and an investment plan, not a residential mortgage loan subject to TILA. Under TILA and common sense, a loan extends credit. In facilitating Hometap's purchase of an option, the Agreement does not create a debt or extend credit. What Plaintiffs strain to characterize as an advance that they must repay is instead the purchase price that Hometap paid for its option. And no obligation to repay that purchase price to Hometap exists—under any scenario. Any proceeds that Hometap could eventually receive upon choosing to exercise the option (a choice it may not make) would simply reflect the value of Hometap's ownership interest. The Agreement thus functions as an option contract not subject to TILA.

The Court should therefore compel Plaintiffs' claims to individual arbitration and stay this action pending the resolution of arbitration. Hometap also requests that the Court stay proceedings pending its resolution of the motion to compel arbitration.

## BACKGROUND

Hometap offers home equity option contracts that allow homeowners to harness the equity in their homes.  Home equity is a significant financial asset for many homeowners, yet it is typically difficult to access.  A homeowner's traditional options are typically limited to selling her home or taking on debt, which carries the obligation to repay the principal amount along with potentially steep interest. Hometap offers another way.  Hometap's contracts allow a homeowner to access her home's equity by paying her cash in exchange for an option to later purchase a percentage ownership interest in the home.  That option would allow Hometap to share in any appreciation (or depreciation) of the home's value.  But it would not ever require the homeowner to repay any debt.  Indeed, unlike home equity loans, Hometap's product carries no obligation to repay the initial amount paid to the homeowner and imposes no interest rate.

## I.    Plaintiffs Enter into the Option Purchase Agreement with Hometap.

Plaintiffs took advantage of Hometap's product to tap into their home equity. Effective February 14, 2023, Hometap entered into an Option Purchase Agreement with Plaintiffs regarding their property at 6 Cherise Court, Jackson Township, New Jersey 08527.  Declaration of Adam Jaskievic ("Jaskievic Decl.") ¶ 4.  When the

parties signed the Agreement, the property's value was approximately $802,000. Jaskievic Decl. Ex. A (Schedule A) at 1.

Under the Agreement, Plaintiffs "agree[d] to sell to Hometap an exclusive and irrevocable option … to acquire an undivided percentage interest … of fee simple title ownership" in their home. *Id.* (Option Purchase Agreement) at 2, § 1.1. To purchase this option, Hometap paid Plaintiffs an "Investment Amount" of $103,575. *Id.* at 3, § 1.4(a); *id.* (Schedule A) at 1. After deducting fees and costs for the transaction, Plaintiffs received a net amount of $98,193.35. *Id.* (Schedule A) at 1-2. To secure performance of the Agreement, the parties entered into a Mortgage and Security Agreement. Jaskievic Decl. Ex. B; *see also* Jaskievic Decl. Ex. A (Option Purchase Agreement) at 1.

The value of Hometap's option depends on the property's value at the future date of any option exercise. Jaskievic Decl. Ex. A (Schedule A). If the home's value has appreciated when Hometap exercises its option, Hometap's percentage ownership interest—called the "Hometap Percentage"—is 21.523%. *Id.* at 1. If the value of the home has depreciated, the Hometap Percentage is 17.936%. *Id.*

As an option contract, the Agreement gives Hometap the "right," but not the obligation, "to exercise the Option." *Id.* (Option Purchase Agreement) at 6, § 2.5. Hometap can exercise its option as of the Agreement's expiration date, which (unless extended) falls ten years after the effective date. *Id.* at 3, § 1.5.

If Hometap exercises the option, the full value of its option—the "Hometap Share"—is calculated by multiplying the property's value by the Hometap Percentage. *Id.* at 4, § 2.2; *id.* (Schedule A) at 3. The option value is capped at a "[m]aximum 20% annualized rate of return on the Investment Amount." *Id.* (Schedule A) at 3 (emphasis removed).

To exercise its option, Hometap would have to pay an additional "Exercise Payment" of 1% of the Investment Amount. *Id.* (Option Purchase Agreement) at 9-10, § 3.1(e). Thus, to obtain its share in the home's appreciation or depreciation, Hometap would pay a total of $104,610.75, minus fees and costs. Plaintiffs would retain that entire amount, with no repayment obligation, much less one with interest.

The option's exercise is not inevitable or required. For one, Plaintiffs could repurchase the option from Hometap at any time before the contract's expiration date by paying Hometap the value of its Hometap Share (i.e., the 21.523% or 17.936% share in the home's value). *Id.* at 5, § 2.4(a)-(b). Hometap may also "elect[] not to exercise the Option." *Id.* at 10, § 3.2(a)-(b). If Hometap made that choice and Plaintiffs chose not to repurchase the option, the option would terminate. *See id.* Upon such termination, "the Investment Amount [would] be retained by [Plaintiffs] in consideration for the Option"—just as they would retain it if the option were exercised. *Id.* at 11, § 3.3(b).

5

Multiple provisions reflect the parties' understanding that the Agreement is not a loan.  The first lines of the Agreement state in bold and capitalized font:

**THIS IS NOT A LOAN.**

**THIS IS AN AGREEMENT PURSUANT TO WHICH A HOMEOWNER RECEIVES PAYMENT IN EXCHANGE FOR AN OPTION TO PURCHASE A SPECIFIED PERCENTAGE INTEREST IN THE HOMEOWNER'S HOME THAT MAY BE EXERCISED IN THE FUTURE UPON THE OCCURRENCE OF CERTAIN EVENTS SUCH AS A SALE OF THE HOME.**

*Id.* at 1.

In the body of the Agreement, after the heading "<u>Not a Loan</u>," the parties agreed that "the payment of the Investment Amount by Hometap is not a loan or any other form of financing transaction, swap, or futures contract."  *Id.* at 12, § 4.1(i). They also agreed that "[u]nder no circumstances will the Investment Amount accrue interest, and if the Option expires, then [Plaintiffs] will not be obligated to return or repay the Investment Amount."  *Id.*

The Agreement further makes clear that Hometap is not a "lender" and that "[t]he Option is intended to be and will be treated for all purposes … as an economic interest and not as a loan."  *Id.* at 21, § 8.4.

## II.    The Option Purchase Agreement Contains Arbitration Agreement and Delegation Provisions.

The Agreement contains provisions under which the parties agreed to arbitrate the merits of any claims under the prominent, all-capitalized and underlined heading

6

"DISPUTE RESOLUTION BY BINDING ARBITRATION." *Id.* at 23, § 8.13.

This arbitration agreement begins with the conspicuous instruction to "PLEASE

READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS." *Id.*

> In this section, Hometap ("we" and "us") and Plaintiffs ("you") agreed that:
>
> [A]ny and all disputes or claims that have arisen or may arise between you and us, whether arising out of or relating to this Agreement or the other Investment Documents, any advertising, or any aspect of the relationship or transactions between us, will be resolved exclusively through final and binding arbitration, rather than a court, in accordance with the terms of this Arbitration Agreement, except that you may assert individual claims in small claims court, if your claims qualify.

*Id.* § 8.13(a); *see id.* at 1.  The arbitration provisions acknowledge that "[t]he Federal

Arbitration Act governs the interpretation and enforcement of this Arbitration

Agreement." *Id.* at 23, § 8.13(a).  Plaintiffs also agreed to arbitrate their claims on

an individual and non-class basis.  *Id.*; *see id.* at 24, § 8.13(c).

The parties stipulated that "[a]rbitration will be conducted by a neutral

arbitrator in accordance with the American Arbitration Association's (the 'AAA')

rules and procedures, including the AAA's Consumer Arbitration Rules

(collectively, the 'AAA Rules'), as modified by this Arbitration Agreement." *Id.* at

24, § 8.13(e) (emphasis removed).  Rule 7(a) of the AAA Rules states that "[t]he

arbitrator shall have the power to rule on his or her own jurisdiction, including any

objections with respect to the existence, scope, or validity of the arbitration

agreement."   Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation

Procedures 14 (2022), https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf (last accessed June 26, 2026).

The parties also agreed in the body of the Option Purchase Agreement that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement." Jaskievic Decl. Ex. A. at 24, § 8.13(e).

**III.    Despite the Arbitration Agreement, Plaintiffs Filed a Putative Class Action Lawsuit Against Hometap.**

On February 12, 2026, Plaintiffs filed this putative class action, alleging that the Option Purchase Agreement is a mortgage loan. *See* Compl., ECF No. 1. On May 18, 2026, Plaintiffs filed an Amended Complaint asserting seven counts against Hometap, alleging violations of TILA and state fraud and lending laws. *See* Am. Compl. ¶¶ 121-75, ECF No. 12.[1]

## LEGAL STANDARDS

The Federal Arbitration Act requires courts to enforce arbitration agreements by compelling arbitration and staying litigation pending arbitration. *See* 9 U.S.C. §§ 3-4. There are "two possible standards for district courts to use when considering

---

[1] A copy of the operative Amended Complaint is attached to the Declaration of Philip A. Goldstein as Exhibit A ("Am. Compl." or "Amended Complaint").

motions to compel arbitration." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 317 (3d Cir. 2024).

Where, as here, "the existence of a valid agreement to arbitrate between the parties is apparent from the face of the complaint, courts must accept as true the facts established by the pleadings," akin to "the standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 317-18 (internal quotation marks and brackets omitted). "In addition to the complaint," courts "may consider exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 395-96 (3d Cir. 2020).

## ARGUMENT

The Option Purchase Agreement mandates arbitration of Plaintiffs' claims, including on the threshold question of whether the merits of this dispute are arbitrable. The arbitrator—not this Court—must decide any arbitrability questions, such as whether the Agreement is subject to TILA's bar on enforcing certain arbitration agreements. And even if the Court were to examine arbitrability, the Agreement does not fall within TILA's arbitration bar because it did not extend

9

"credit."  Consistent with the FAA and the binding provisions to which they agreed, this Court should compel Plaintiffs to arbitrate.

## I.       The Arbitrator Must Decide Any Threshold Issues of Arbitrability.

The arbitration provisions of the Agreement delegate threshold issues of arbitrability to the arbitrator.  The Agreement states that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement."  Jaskievic Decl. Ex. A at 24, § 8.13(e). The Agreement also incorporates the "AAA Rules," which in turn also delegate threshold arbitrability questions to the arbitrator.  *Id.* (emphasis removed); *see supra* at 7.  These provisions provide "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability.  *Young*, 119 F.4th at 321 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)) (internal quotation marks omitted).  The delegation provisions are coterminous with the arbitration agreement, meaning that they apply in any dispute "arising out of or relating to" the Option Purchase Agreement.  Jaskievic Decl. Ex. A at 23, § 8.13(a).  They indisputably encompass Plaintiffs' claims, and they are valid and enforceable.[2]  This Court should

---

[2] Plaintiffs have not raised any challenge to the formation of the Option Purchase Agreement, or the arbitration and delegation agreements within the Agreement, under New Jersey principles of contract formation.  Rightly so, as the contract was properly formed by mutual assent.  *See* Jaskievic Decl. Ex. A at 28-29 (signature pages); *see also James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017).

thus grant the motion to compel without reaching any threshold arbitrability question, including whether TILA applies.

**A.    Plaintiffs Cannot Invoke TILA to Bypass the Delegation Provisions.**

TILA states that "[n]o residential mortgage loan … may include terms which require arbitration … as the method for resolving any controversy or settling any claims arising out of the transaction." 15 U.S.C. § 1639c(e)(1). Plaintiffs argue that this provision invalidates the arbitration agreement—including the delegation provisions. *See* ECF No. 16 at 3. Plaintiffs are wrong. TILA precludes arbitration of *merits* disputes arising out of transactions for residential mortgage loans. It does not bar arbitrating the threshold arbitrability question of whether a transaction is a residential mortgage loan to which TILA applies.

Start with arbitration first principles. Arbitration cases can involve "three layers" of disputes: "(1) merits, (2) arbitrability, and (3) who decides arbitrability." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024). The first layer concerns liability; the second whether liability must be arbitrated; and the third who decides whether liability must be arbitrated. *See id.* at 148-49.

Whether the Agreement is a "residential mortgage loan" under TILA affects only the second-order question of arbitrability. If TILA applies, then the parties have not validly agreed to arbitrate the merits of the underlying claims. If TILA does not apply, the merits are arbitrable.

11

But TILA's bar on arbitrating merits questions does not bear on the third-order question of *who decides* arbitrability in the first instance. A delegation clause resolves that third-order dispute. *See Henry Schein*, 586 U.S. at 67-68. Here, the delegation provisions send such arbitrability questions to the arbitrator. Thus, this Court should not preclude an arbitrator from deciding arbitrability on the (mistaken) ground that a dispute is not arbitrable. That result would defeat the purpose of a delegation clause.

In arguing otherwise, Plaintiffs warp TILA's text. TILA prohibits residential mortgage loans from including "terms which require arbitration … as the method for resolving any controversy." 15 U.S.C. § 1639c(e)(1). Plaintiffs assert that the threshold dispute over arbitrability is itself a "controversy" that cannot be arbitrated. ECF No. 16 at 3. But nothing in the term "controversy" or its context suggests that it includes a dispute about arbitrability rather than the underlying merits dispute. A "controversy" refers to "a civil action or suit." Controversy, BLACK'S LAW DICTIONARY (4th ed. 1968). By including that word, TILA covers both civil actions as a whole and individual "claims" within them. 15 U.S.C. § 1639c(e)(1) (prohibiting arbitration for "resolving any controversy or settling any claims"). That is, it covers liability disputes. TILA's plain meaning is thus that it bars arbitration of *merits* disputes arising out of a transaction *after* it is determined that the transaction is a "residential mortgage loan" subject to TILA.

12

There is no basis for reading TILA to bar arbitration of disputes about *whether* a transaction is a "residential mortgage loan" subject to TILA.  Federal district courts have reached just this conclusion in confronting the arguments Plaintiffs advance. These courts have correctly held that TILA does not dictate "who is empowered to decide arbitrability in the first instance." *Veneziani v. Unison Agreement Corp.*, No. 22-cv-1789, 2023 WL 4201961, at *2 (W.D. Wash. June 27, 2023); *Olsen v. Unison Agreement Corp.*, No. 22-cv-1859, 2023 WL 4492346, at *2 (W.D. Wash. June 27, 2023); *Baskin v. EK Real Est. Servs., NY, LLC*, No. 21-cv-727, 2022 WL 17742738, at *10 (E.D. Tex. Sept. 14, 2022); *see also Sitzman v. EK Real Est. Servs. of NY LLC*, No. 21-cv-2666, 2022 WL 17853214, at *7-8 (N.D. Tex. Dec. 21, 2022) (holding that the TILA argument "do[es] not attack … the validity of the delegation clause").  That is because "nothing in the TILA provision[] invoked here … bars the delegation of questions of arbitrability." *Baskin*, 2022 WL 17742738, at *10.

This Court should reach the same result.  Because TILA is silent on who decides arbitrability, the Agreement's delegation provisions control.  *See Coinbase*, 602 U.S. at 152 ("[A]bsent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration.").  Plaintiffs' TILA-based challenge therefore does not extend beyond the agreement to arbitrate the merits and does not undermine the agreement to arbitrate threshold arbitrability issues.

13

**B.    Plaintiffs' State-Law Challenges Do Not Overcome the Delegation Provisions.**

Plaintiffs' unconscionability assertions do not undermine this conclusion. Plaintiffs contend that "the arbitration agreement—and specifically the delegation clause—are not written in a simple, clear understandable and easily readable way" as required by New Jersey law and that "they are unconscionable." ECF No. 16 at 3 (citing N.J.S.A. § 56:12-1 *et seq.*). But Plaintiffs identify nothing about the delegation provisions that are unclear. *See id.* The Agreement plainly incorporates the AAA rules, which constitutes "clear and unmistakable evidence" of a delegation agreement here. Jaskievic Decl. Ex. A at 24, § 8.13(e); *see also Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (collecting cases from "virtually every circuit" (brackets omitted)); *Blueprint Cap. Advisors, LLC v. Div. of Inv.*, No. 23-1116, 2023 WL 8866554, at *2 (3d Cir. Dec. 22, 2023). And in even plainer terms, the Agreement states that the arbitrator will decide "issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement." Jaskievic Decl. Ex. A at 24, § 8.13(e). That provision leaves no room for confusion.

Nor are the Agreement's specific delegation provisions unconscionable. Indeed, although Plaintiffs' Amended Complaint contains a series of (incorrect) allegations about how the Agreement is unconscionable, they fail to explain how the *delegation provisions* are unconscionable. Am. Compl. ¶ 159; ECF No. 16 at 3. To

14

the extent they suggest that the delegation provisions unconscionably favor Hometap, that argument fails.  No one-sidedness exists; both Plaintiffs and Hometap submitted to arbitration of threshold issues on the same terms.  And to the extent Plaintiffs' unconscionability argument simply repackages their claim that the delegation provisions are unclear, that argument fails for the reasons just described. *See* Am. Compl. ¶ 159 (alleging that Hometap "draft[ed] the contract in an intentionally confusing manner that makes it nearly impossible to understand").  The delegation provisions should thus be enforced.

## II.     Alternatively, if the Court Reaches Threshold Arbitrability Issues, No Valid Ground for Avoiding Arbitration Exists.

Even if this Court were to act contrary to the delegation provisions and decide arbitrability, no threshold arbitrability issues warrant declining to compel arbitration.

### A.     This Dispute Falls Within the Scope of the Arbitration Agreement.

The arbitration agreement broadly requires arbitration of "any and all disputes or claims … whether arising out of or relating to this Agreement or the other Investment Documents . . . or any aspect of the relationship or transactions between" the parties.  Jaskievic Decl. Ex. A at 23, § 8.13(a).  Plaintiffs' claims, which are entirely grounded in the Agreement, fall within this scope.

15

### B.    TILA Does Not Apply to the Option Purchase Agreement.

TILA does not bar enforcement of the arbitration agreement, because the Agreement does not concern a residential mortgage loan.  TILA states that "[n]o residential mortgage loan … may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction."  15 U.S.C. § 1639c(e)(1).  TILA defines "residential mortgage loan" to mean a "consumer *credit* transaction" that is "secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling."  *Id.* § 1602(dd)(5) (emphasis added).  That is, to constitute a "consumer credit transaction" that could qualify as a "residential mortgage loan" subject to TILA's arbitration bar, an agreement must extend "credit."  The Agreement does not extend credit.  It therefore is not a residential mortgage loan.

### 1.    The Option Purchase Agreement Does Not Extend Credit.

TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment."  *Id.* § 1602(f).  TILA does not define the word "debt," so the ordinary meaning of that term controls.  *See Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 246 (3d Cir. 2025).  "Debt" is

16

something "owed," and "owed" requires an obligation to repay. Debt, Owe, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976).

Consistent with those definitions, a "credit transaction" involves "the right of deferred payment … promised in exchange for some form of consideration." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 n.5 (7th Cir. 2021); *see also Riethman v. Berry*, 287 F.3d 274, 277 (3d Cir. 2002) ("The hallmark of 'credit' under the [Equal Credit Opportunity Act] is the right of one party to make deferred payment.").

Similarly, a "loan" permits a debtor to defer payment, but that payment is always eventually due to be repaid (typically with interest). *See* Loan, BLACK'S LAW DICTIONARY (4th ed. 1968) ("[A]dvance of money with an absolute promise to repay"; "contract whereby one delivers money to another who agrees to return equivalent sum"; "payment of money by one to another to be repaid some future day"; "[t]ransaction wherein one party transfers to the other a sum of money which that other agrees to repay absolutely."). A loan therefore requires a contractual repayment obligation: the borrower receives money and agrees to pay it back.

The Agreement does not qualify. The Agreement does not require any repayment of any debt, much less repayment with interest. Upon paying Plaintiffs the Investment Amount of approximately $100,000, Hometap received the right to later exercise the option to purchase a share in the home's value. Jaskievic Decl. Ex.

17

A (Schedule A); *id.* (Option Purchase Agreement) at 2, § 1.1.  Hometap did not obligate Plaintiffs to repay the Investment Amount, much less do so with interest. Because Plaintiffs never have to repay that Investment Amount, the Option Purchase Agreement is neither a credit transaction nor a residential mortgage loan.

Indeed, until Hometap exercises its option or the Agreement terminates, Plaintiffs' only obligation is to keep open the continuing offer to sell Hometap an ownership interest in the home.  *Id.* (Option Purchase Agreement) at 2, § 1.1.  And if Hometap did exercise its option, Plaintiffs' only additional obligation at that point would be to allow Hometap to share in the home's value according to its ownership interest (21.523% if the property appreciates, 17.936% if it depreciates)—not to repay any amount that Hometap paid to Plaintiffs.  *Id.* (Schedule A).  At no point does the Agreement require Plaintiffs to repay the Investment Amount to Hometap or do so with interest.  *Id.* (Option Purchase Agreement) at 12, § 4.1(i).  That is because the Agreement did not extend them "credit" or create any "debt."

Plaintiffs attempt to circumvent this straightforward conclusion by characterizing the Investment Amount as an "advance," arguing that Hometap "ensure[s] it will get repaid."  ECF No. 16 at 2.  In effect, Plaintiffs contend that Hometap will always recover a sum equal to or exceeding the Investment Amount under the Agreement's terms.  That assertion is incorrect.  The specific Investment Amount is never repaid to Hometap.  Nor is any amount guaranteed to Hometap

18

under the contract. There are multiple scenarios, in fact, in which Hometap walks away with nothing, while Plaintiffs always retain the Investment Amount.

The Agreement provides, for example, that if Hometap "elect[s]" not to exercise its option after the expiration date, the option simply terminates. Jaskievic Decl. Ex. A at 10, § 3.2(b). And the "Investment Amount *will be retained* by [Plaintiffs]." *Id.* at 11, § 3.3(b) (emphasis added). Indeed, the Agreement further states that "[u]nder no circumstances will the Investment Amount accrue interest, and if the Option expires, then [Plaintiffs] will not be obligated to return or repay the Investment Amount." *Id.* at 12, § 4.1(i). In other words, if the option expires and is not exercised, Plaintiffs keep the roughly $100,000 payment, with *nothing* due from Plaintiffs—no obligation to repay the Investment Amount and no interest due.

Additional scenarios exist in which Hometap would not recover a sum equal to the Investment Amount (while Plaintiffs will always retain that sum). Because Hometap purchased a right to an ownership interest in the home, what Hometap would receive under the contract depends on the property's value at the time of Plaintiffs' option repurchase or Hometap's exercise of the option. *See id.* at 4, § 2.2. If the property value were to decrease, Hometap could end up receiving less than the Investment Amount. For example, if the home depreciates to approximately $577,470 or less, Hometap's 17.936% share would be worth less than $103,575— i.e., less than the Investment Amount. The contract contemplates this result because

19

Hometap's option, and ultimate payout or lack thereof, is not tethered to the Investment Amount or its repayment.  It is instead tied to the home's value.  Meanwhile, Plaintiffs never have to repay the Investment Amount.

Plaintiffs also contend that "Hometap's business model requires it to get repaid because it bundles and securitizes its contracts and sells them to investors, to whom Hometap guarantees a beneficial rate of return."  ECF No. 16 at 2.  This deflection has no merit.  That bundling simply reflects Hometap's risk of loss on any one individual transaction.  The risk that a given property's value may decline is why Hometap's business model involves bundling transactions, so that gains on some transactions may offset losses on others.  No individual transaction within a bundle—like Hometap's contract with Plaintiffs—is a loan, because none of those transactions require or ensure repayment.  Hometap's business model is not based on any guarantee of repayment embedded within an individual Agreement, but on the likelihood that its ownership interest in the value of the property will be worth more than what it pays, especially in the aggregate across many bundled transactions.  Because the Agreement imposes no obligation to repay a monetary sum that Hometap gave to Plaintiffs, TILA does not consider it a "credit transaction" or any kind of "residential mortgage loan."  15 U.S.C. § 1602(dd)(5).

The out-of-circuit decisions Plaintiffs cite to argue otherwise are also inapt.  *See* ECF No. 16 at 1.  Those decisions involve different products, different

20

contractual terms, or different procedural postures, and none is controlling in this Circuit. To start, the Ninth Circuit's unpublished memorandum disposition in *Olson v. Unison Agreement Corp.* addressed only Washington law and expressly declined to interpret that law "consistently with the TILA."[3]  No. 23-2835, 2025 WL 2254522, at *5 (9th Cir. Aug. 7, 2025). The contract there also required, to terminate the agreement, paying "the *greater* of (1) the sum of Unison's initial $64,750 payment and any additional owner obligations that had accrued; or (2) the amount that Unison would obtain if the house were to be sold at that time." *Id.* at *2. The Option Purchase Agreement here has no minimum repayment obligation under any circumstances, so *Olson* does not control.

Plaintiffs fare no better with the other non-binding cases they cite. *Commonwealth v. Hometap Equity Partners, LLC* applied state law—not TILA— and did not reach a final decision on whether the agreement was a loan, even under state law. No. 2584CV00469, 2025 WL 2468564, at *5-7 (Mass. Super. Ct. Aug. 21, 2025); *see id.* at *7 ("[I]t is premature to conclude one way or the other" whether Hometap's "HEIs are loans."). And the unreasoned Arizona trial court decision in *Muskal v. Point* purporting to apply TILA should likewise not persuade this Court. ECF No. 16 at 1 (citing *Muskal v. Point*, CV 2025-024855 (Ariz. Super. Ct. Dec. 17,

---

[3] After it issued its non-precedential opinion, the Ninth Circuit vacated its judgment, leaving the district court's judgment dismissing the plaintiffs' state-law claims in place.

2025), Dkt. 5).  That cursory ruling offered no support from TILA's text, lacks any rationale for this Court to employ, and is not likely to survive the pending appeal.

In contrast, the only decision to have analyzed TILA's text in full held that it does not cover option contracts, like Hometap's, where the owner "did not agree to 'repay absolutely' the option premium payment."  *See Foster v. Equitykey Real Est. Invs. L.P.*, No. 17-cv-67, 2017 WL 1862527, at *4 (N.D. Cal. May 9, 2017).  That reasoning should control here.  Although the precise risk of loss may vary across this class of option contracts, they all lack the essential requisite of a loan in that they do not require a return of the investment amount.  *See id.*

### 2.    The Option Purchase Agreement is an Option Contract and an Investment Plan.

Further confirming that TILA does not apply, the Agreement fits squarely within categories of contracts that are not subject to TILA's arbitration bar—option contracts and investment plans.  *See Foster*, 2017 WL 1862527, at *5.  As the Consumer Financial Protection Bureau's official staff commentary recognizes, both option contracts and investment plans are excluded from the definition of "credit." 12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(vii), (viii).  That commentary warrants "due respect" regarding the proper interpretation of TILA.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024).

An option contract extends a "continuing offer" and restricts the optionor's "power to revoke [that] offer."  Restatement (Second) of Contracts § 25 & cmt. a.

22

Although optionors (Plaintiffs) must hold open the offer for the duration of the option period, the optionee (Hometap) has discretion whether to exercise the option. *See Bd. of Trs. of Trucking Emps. of N.J. Welfare Fund, Inc.–Pension Fund v. Centra*, 983 F.2d 495, 503 (3d Cir. 1992) ("[A]n option owner always has the power to allow an option to lapse for any reason.  That discretion is the hallmark of an option."). That scenario describes the Agreement precisely.  Plaintiffs offered to sell Hometap a percentage ownership interest in their property and committed to holding that offer open for the duration of the option period.  Jaskievic Decl. Ex. A at 2, § 1.1.  And Hometap had the ability—but not the obligation—to exercise the option. *Id.* at 6, § 2.5.

The Agreement's terms confirm that it is an option contract, not a loan.  The Agreement states, in bold and capitalized letters, that it is "**NOT A LOAN**." *Id.* at 1.  A section with the underlined heading "Not a Loan" provides that "the payment of the Investment Amount by Hometap is not a loan." *Id.* at 12, § 4.1(i).  The Agreement makes clear that Hometap is not a "lender" and that "[t]he Option is intended to be and will be treated for all purposes … as an economic interest and not as a loan." *Id.* at 21, § 8.4.  The Agreement also states (again in bold and capitalized font) that unlike a loan, the Agreement is one "**PURSUANT TO WHICH A HOMEOWNER RECEIVES PAYMENT IN EXCHANGE FOR AN OPTION TO PURCHASE A SPECIFIED PERCENTAGE INTEREST IN THE**

23

**HOMEOWNER'S HOME THAT MAY BE EXERCISED IN THE FUTURE."**

*Id.* at 1.  Consistent with the parties' objective intent shown by the Agreement's conspicuous and unambiguous text, this Court should recognize that the Agreement is an option contract, not a loan.

Moreover, because the Agreement ties Hometap's potential proceeds to the property's future value, Hometap's initial investment payment functions as an investment in the property, where Hometap "risk[ed] the loss of the capital advanced."  12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(viii).  Hometap bore the risk that the value of its ownership interest would be less than its initial investment payment.  If the property depreciated to less than approximately $577,470, Hometap's 17.936% share would be worth less than its $103,575 investment, and Hometap would thus share in Plaintiffs' loss.  *See* Jaskievic Decl. Ex. A (Schedule A).  That arrangement does not qualify as a loan or impose a debt; rather, it is a distinct kind of contract.

Reflecting that arrangements like those the Agreement offers fall outside traditional lending laws, several States have amended their lending laws to expressly regulate "shared appreciation agreements."  *See* Act of Aug. 9, 2024, No. 103-1015, 2024 Ill. Laws; Act of May 8, 2023, ch. 568, 2023 Md. Laws; Public Act No. 25-115, 2025 Conn. Acts (Reg. Sess.); Public Act No. 21-138, 2021 Conn. Acts (Reg.

24

Sess.).  Those statutes seek to cover the unique home equity investment agreements that Hometap offers—because existing consumer credit laws and TILA do not.

Because the Agreement qualifies as an option contract and investment plan, rather than a loan and an extension of credit, TILA and its arbitration bar do not apply.

### C.    The Arbitration Agreement is Not Unclear or Unconscionable.

No unconscionability argument changes this result.  Plaintiffs briefly contend that the arbitration agreement, like the delegation provisions within it, is unenforceable under New Jersey law because it is unclear and unconscionable.  *See* ECF No. 16 at 3.  But as with Plaintiffs' challenge to the delegation provisions, Plaintiffs identify nothing about the agreement to arbitrate the merits that is unclear or unconscionable.  *See id.*

The Option Purchase Agreement identifies the arbitration agreement with the capitalized and underlined heading "DISPUTE RESOLUTION BY BINDING ARBITRATION."  Jaskievic Decl. Ex. A at 23, § 8.13.  The arbitration agreement straightforwardly states that "any and all disputes or claims that have arisen or may arise between you and us … will be resolved exclusively through final and binding arbitration."  *Id.* § 8.13(a).  Contrary to Plaintiffs' claim, that is a "simple, clear, understandable and easily readable" arbitration agreement.  ECF No. 16 at 3.  The Agreement also provided Plaintiffs the right to cancel the transaction, and in turn

25

exit the arbitration agreement, within three business days.  Jaskievic Decl. Ex. C.

This opt-out opportunity further supports the conclusion that the arbitration

agreement within the larger Agreement is not unconscionable.  *See Mancuso v. MDG*

*USA, Inc.*, No. 23-1963, 2024 WL 1230149, at *2 (3d Cir. Mar. 22, 2024).  And

Plaintiffs and Hometap fairly agreed to arbitration on the same terms.  No lack of

clarity or unconscionability exists.

In sum, if the Court reaches the question of whether the parties' agreement to

arbitrate the merits is valid, Plaintiffs present no meritorious ground for concluding

that the arbitration agreement is unenforceable.  Under the FAA, the Court should

compel arbitration and stay proceedings pending the resolution of that arbitration.

*See* 9 U.S.C. § 3.

## III.    The Court Should Stay Proceedings Pending Resolution of the Motion to Compel Arbitration.

While the Court considers Hometap's motion to compel arbitration, Hometap

requests that the Court stay all proceedings—including any discovery—pending its

decision on the motion.

This Court has broad discretionary power to stay proceedings.  *See Landis v.*

*N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Bechtel Corp. v. Loc. 215, Laborers'*

*Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("A United

States district court has broad power to stay proceedings.").  In deciding whether to

grant a stay, courts in this District weigh four factors: (1) whether a stay would

26

unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the movant; (3) whether a stay would simplify the issues and trial of the case; and (4) whether discovery is complete and/or a trial date is set. *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014). Each factor favors a stay.

*First*, a stay would not unduly prejudice Plaintiffs. "Delay inherently results from the issuance of a stay, but 'mere' delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage." *Id.* at 447. This case is in its earliest stages; no scheduling order has been entered, and discovery has not begun. Plaintiffs will suffer no prejudice from a pause while the Court addresses whether this dispute belongs in arbitration. Indeed, Plaintiffs have confirmed that they are "amenable to a stay of proceedings pending resolution of Defendants' anticipated motion to compel arbitration." ECF No. 17 at 1.

*Second*, denying the stay would impose clear hardship and inequity on Hometap. Requiring Hometap to participate in further proceedings (including discovery) before the Court decides whether this case should proceed in this forum would directly undermine the purpose of the parties' arbitration agreement, including its delegation provisions. That hardship is especially acute here because a putative class action "broadens the scope of discovery and adds a layer of complexity to the litigation." *Burress v. Freedom Mortg. Corp.*, No. 20-15242, 2021

27

WL 2661254, at *4 (D.N.J. May 26, 2021).  If Hometap's motion to compel arbitration is granted, however, that added complexity will be resolved and removed.

*Third*, a stay would simplify the issues and the case.  Resolving Hometap's motion to compel arbitration could dispose of the entire litigation in this forum, conserving judicial resources.  A brief stay of proceedings here would help simplify this matter by resolving the threshold motion first.  *See* Letter Order at 7, *Gov't Emps. Ins. Co. v. Mian*, No. 22-cv-00233 (D.N.J. Sept. 18, 2023), ECF No. 225; *see also Gov't Emps. Ins. Co. v. Mian*, No. 22-cv-233, 2024 WL 2057294, at *2 (D.N.J. May 8, 2024) ("The Court found that the parties' relative hardships and prejudices, as well as the early stage of the case, warranted a stay of discovery; and that a stay would assist in simplifying the case because 'it is possible that a large swath of discovery and perhaps a trial in this Court may be unnecessary' if 'at least some of the issues could be resolved through arbitration.'" (quoting ECF No. 225 at 8-9)).

*Fourth*, discovery has not yet commenced, and no trial date has been set.  This case is at the earliest possible stage, which further supports a stay.  *See, e.g.*, *Anfibio v. Optio Sols. LLC*, No. 20-cv-11146, 2020 WL 8483808, at *2 (D.N.J. Dec. 30, 2020) (granting motion to stay discovery and finding the fourth factor satisfied where the parties had not engaged in significant discovery and a trial date was not scheduled).

Moreover, a stay is warranted where the underlying motion "appear[s] to have substantial grounds or, stated another way, do[es] not appear to be without foundation in law." *Actelion Pharms. Ltd. v. Apotex Inc.*, No. 12-cv-5743, 2013 WL 5524078, at *3 (D.N.J. Sept. 6, 2013). As discussed above, Hometap's motion to compel arbitration is likely to succeed given the clear, enforceable arbitration and delegation provisions in the Option Purchase Agreement.

To the extent Plaintiffs seek discovery while this motion is pending, such discovery is unwarranted and should not be permitted. *See* ECF No. 16 at 1 n.1 ("If HomeTap asks the Court to look beyond the allegations in Plaintiffs' complaint to decide their motion to compel arbitration, Plaintiffs request that the Court permit discovery on the matters outside the pleadings."). The motion to compel arbitration can and should be decided based on the text of the Agreement, which is attached to and authenticated by the declaration of Adam Jaskievic. Jaskievic Decl. ¶ 4; *see* Jaskievic Decl. Ex. A. Whether the Agreement is an option contract or a residential mortgage loan is a legal question resolved by interpreting the Agreement's terms—not by exploring extrinsic facts about Hometap's business model. In the current posture, extrinsic or merits-based discovery is improper. Ordering completion of discovery while a motion to compel arbitration is pending would "'in essence' constitute[] a declination to stay litigation pending arbitration under FAA 9 U.S.C.

29

§ 3." *Klepper v. SLI, Inc.*, 45 F. App'x 136, 138 (3d Cir. 2002).  The Court should therefore decide the motion to compel arbitration before permitting discovery.

## CONCLUSION

For these reasons, Hometap respectfully requests that the Court (1) compel Plaintiffs to arbitrate their claims on an individual basis, (2) stay this action pending the outcome of arbitration under the Federal Arbitration Act, and (3) stay all proceedings pending the Court's ruling on the motion to compel arbitration.

Dated: June 26, 2026          Respectfully submitted,
       New York, NY

*/s/ Philip A. Goldstein*
Philip A. Goldstein
McGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, NY 10020-1104
Phone: (212) 548-2167
Email: pagoldstein@mcguirewoods.com

*Attorney for Defendants Hometap Equity
Partners, LLC and Hometap Investment
Partners III SPV, LLC*

30