# EXHIBIT B

*After Recording Return To:*
Hometap Equity Partners, LLC
800 Boylston Street
16th Floor
Boston, MA 02199


*Recording Requested By:*
*Hometap Investment Partners III SPV, LLC*
Investment No.: NJ620393

*Prepared By:*
Adam Jaskievic
Hometap Equity Partners, LLC
800 Boylston Street, 16th Floor
Boston, MA 02199

Block: 15801
Lot: 21

C-NJ859538

_____[Space Above This Line For Recording Data] _____


**Investment Amount: $103,575.00**

## MORTGAGE AND SECURITY AGREEMENT

This MORTGAGE AND SECURITY AGREEMENT, together with any riders (this "**Security Instrument**"), is made as of 02/14/2023 ("**Signing Date**"), by and between Keicha Greenidge and Ryan P. Billey, married (collectively, the "**Owner/Mortgagor**") and Hometap Investment Partners III SPV, LLC, a Delaware limited liability company, whose address is 800 Boylston St, 16th Floor, Boston, MA 02199, and its successors and assigns ("**Hometap/Mortgagee**"). This Mortgage and Security Agreement was prepared by Adam Jaskievic, with an address of: c/o Hometap, 800 Boylston Street, 16th Floor, Boston, MA 02199.

### RECITALS

A.      This Security Instrument is given in connection with the execution of the Option Purchase Agreement by and between Owner and Hometap (the "**Option Agreement**") of even date, by which Mortgagor grants and conveys to Mortgagee the option to purchase an undivided percentage interest in that certain real property and improvements thereof located at 6 Cherise Ct, Jackson Township, NJ 08527 and further described on Exhibit A attached hereto (the "**Property**").

B.      Mortgagee desires to secure the rights granted to it in the Option Agreement and the performance of the Obligations (as defined below).

C.      This Security Instrument is given pursuant to the Option Agreement, and payment fulfillment, and performance of the obligations due under the Option Agreement are secured by this Security Instrument in accordance with the terms set forth herein.

D.    Capitalized terms used in this Security Instrument have the meanings provided in this Security Instrument, or if not defined in this Security Instrument, in the Option Agreement. The Option Agreement and this Security Instrument are collectively referred to as the "**Hometap Homeowner Agreement.**"

## TERMS

1.    Grant. OWNER HEREBY IRREVOCABLY mortgages, grants, transfers, and assigns to Hometap, and its successors and assigns, a security interest, with POWER OF SALE, for the benefit of Hometap, and its successors and assigns, in and to the Property, together with all improvements, replacements, and additions now or hereafter erected on the Property, all easements, appurtenances, and fixtures now or hereafter a part of the Property, and all rents, issues, profits, and proceeds, including insurance and condemnation proceeds, from the Property.

OWNER COVENANTS that Owner is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Owner warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall well and truly (a) pay to Mortgagee the Hometap Share at the time and in the manner provided in the Option Agreement, this Security Instrument, and the other Investment Documents, (b) perform the Obligations as set forth in the Option Agreement, this Security Instrument, and the other Investment Documents, and (c) abide by and comply with each and every covenant and condition set forth in the Option Agreement, this Security Instrument, and the other Investment Documents, these presents and the estate hereby granted shall cease, terminate, and be void; *provided, however*, that Mortgagor's obligation to indemnify and hold harmless Mortgagee pursuant to the provisions hereof shall survive any such payment and release.

2.    Secured Obligations. Owner makes the grant, transfer, and assignment set forth in Section 1 to secure the following:

(a)    Owner's performance of each of its obligations in the Option Agreement;

(b)    Mortgagee's rights under the Option Agreement;

(c)    Owner's payment obligations in the Option Agreement, including:

(i)    Payment of the Hometap Share owed to Mortgagee pursuant to the terms of the Option Agreement;

(ii)    Payment of all Option Fees owed to Mortgagee pursuant to Section 6.1 of the Option Agreement;

(iii)    Payment of all insurance proceeds owed to Mortgagee pursuant to Section 6.1 of the Option Agreement;

(iv)    Payment of all condemnation proceeds owed to Mortgagee pursuant to Section 6.1 of the Option Agreement;

(v)    Payment of the liquidated damages pursuant to Section 7.4 of the Option Agreement;

(vi)    Reimbursement of any expenditures made by Mortgagee pursuant to Section 6.1 and Section 7.2 of the Option Agreement; and

(d)    Payment of all costs, fees, and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel) (collectively, **"Legal Fees"**) incurred by Mortgagee in the enforcement and collection of the obligations listed above and the protection of Mortgagee's related rights, whether such costs, fees, and expenses are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Legal Fees include Legal Fees incurred in any state, federal, appellate, or bankruptcy court and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this Security Instrument, to the interpretation or enforcement of the parties' rights under this Security Instrument, or to the Property.

The foregoing obligations are referred to collectively as the **"Obligations."**

3.    <u>Uniform Commercial Code Security Agreement and Fixture Filing</u>.    This Security Instrument also is intended to be and will constitute a fixture filing financing statement and security agreement under the New Jersey Uniform Commercial Code for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the New Jersey Uniform Commercial Code. Owner grants to Mortgagee a security interest in those items to secure the performance and payment of the Obligations.

(a)    Owner agrees that Mortgagee may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index and/or in the Office of New Jersey Department of the Treasury's Division of Revenue and Enterprise Services, as a financing statement for any of the items specified in the preceding paragraph as part of the Property.

(b)    This Security Instrument constitutes a financing statement filed as a fixture filing pursuant to the New Jersey Uniform Commercial Code, and any similar or successor provisions.

(c)    Mortgagee may file such extensions, renewals, amendments, and releases as are appropriate to reflect the status of its security interest.

(d)    Owner will pay all costs, fees, and expenses of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and will pay all costs, fees, and expenses of any record searches for financing statements that Mortgagee may require.

(e)    Upon an Event of Default, Mortgagee will have the remedies of a secured party under the New Jersey Uniform Commercial Code and may also take the actions provided in Section 7 below and Section 7 of the Option Agreement.  In exercising any of these remedies and taking any of these actions, Mortgagee may proceed against the Property's items of real property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Mortgagee's remedies under the New Jersey Uniform Commercial Code or the actions available in Section 7 below and Section 7 of the Option Agreement.

4.    <u>Absolute Assignment of Leases and Rents</u>.  Owner absolutely and unconditionally assigns to Mortgagee all of Owner's right, title, and interest in and to all current and future leases, subleases, and licenses relating to the use, occupancy, or enjoyment of all or any part of the Property and all rents, income, revenues, profits, proceeds, and earnings now or hereafter payable with respect to the ownership, use, or occupancy of the Property (collectively, **"Rents"**); it being intended by Owner that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.

(a)    Owner gives to and confers upon Mortgagee the right, power, and authority, during the continuance of this Security Instrument, to collect the Rents, reserving the right upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security Instrument, to collect and retain the Rents, as they become due and payable.

(b)    Upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security Instrument, Mortgagee may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect the Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Legal Fees, to the Obligations, and in such order as Mortgagee may determine.

(c)    The entering upon and taking possession of the Property, the collection of the Rents, issues, and profits and the application of the Rents, issues, and profits pursuant to this Security Instrument, will not cure or waive any breach or notice of default under this Security Instrument or invalidate any act done pursuant to such notice.

(d)    Nothing in this Section will permit Owner to lease or rent the Property in contravention of any provision of the Option Agreement; nor will anything in this Section modify any provision in the Option Agreement relating to the use, lease, rent, or occupancy of the Property.

5.    <u>Covenants of Owner Regarding the Property</u>.  Owner agrees as follows:

(a)    To appear in and defend any action, suit, or proceeding purporting to affect the security of this Security Instrument or the rights or powers of Mortgagee; and to pay all costs, fees, and expenses of Mortgagee (including cost of evidence of title and Legal Fees) incurred: (i) in any state, federal, appellate, or bankruptcy court, in any action, suit, or proceeding in which Mortgagee may appear, and in any action, suit, or proceeding brought by Mortgagee to foreclose this Security Instrument or to collect the Obligations or to protect Mortgagee's rights under this Security Instrument or the Option Agreement; and/or (ii) in connection with the enforcement of any provision of this Security Instrument or in connection with foreclosure upon the collateral granted under this Security Instrument, whether or not an action or suit is filed.

(b)    To pay at least ten (10) days before delinquency all taxes and assessments affecting the Property and all encumbrances, charges, and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this Security Instrument, and all costs, fees, and expenses of this Security Instrument.

(i)    If Owner fails to make any payment or to do any act as provided in this Security Instrument, Mortgagee may, but will not be obligated to, make the payment or do any such act, in the required manner and to the extent deemed necessary by Mortgagee to protect the security for this Security Instrument, and which any such payment and related expenses, including Legal Fees, will also be secured by this Security Instrument.

(ii)    Such payments made or actions taken by Mortgagee will not require notice to, or demand on, Owner and will not release Owner from any obligation under this Security Instrument.

(iii)    Mortgagee will have the following related rights and powers: (A) to enter upon the Property for the foregoing purposes, (B) to appear in and defend any action or proceeding

purporting to affect the Property or the rights or powers of Mortgagee under this Security Instrument, (C) to pay, purchase, contest, or compromise any encumbrance, charge, or lien that in the judgment of Mortgagee appears to be prior or superior to this Security Instrument, and (D) to employ counsel and to pay such counsel necessary expenses and costs, including Legal Fees.

(c)     To pay immediately upon demand all sums expended by Mortgagee related to this Security Instrument and to pay interest on any of such amounts demanded by Mortgagee at a rate not to exceed the maximum rate allowed by law at the time of such demand.

6.     <u>Power of Attorney</u>.  Owner irrevocably appoints Mortgagee as Owner's agent and attorney-in-fact (such agency being coupled with an interest).  As agent and attorney-in-fact, Mortgagee may, in Mortgagee's name or in the name of Owner, prepare, execute, and file or record financing statements, continuation statements, applications for registration, and similar documents to create, perfect, or preserve any of Mortgagee's security interests and rights in or to any of the Property. Upon an Event of Default, Owner's failure to perform any Obligation timely, or a breach of any agreement of Owner in this Security Instrument, Mortgagee may take any other action that may be required or desired of Owner, including the ability to advertise and solicit the Property for sale, encumber the Property by obtaining loans secured by liens on the Property to raise funds deemed required or advisable to improve, repair, and prepare the Property for sale, and sell and convey the entire interest in, and title to, the Property; *provided, however,* that Mortgagee as agent and attorney-in-fact will be accountable only for such funds as are actually received by Mortgagee.

7.     <u>Default and Foreclosure</u>.  Upon an Event of Default, Mortgagee may declare all performance and Obligations secured by this Security Instrument immediately due by delivery to Owner of a written declaration of default.  If any Event of Default has occurred and is continuing, Mortgagee may take any or all of the following actions, at the same or at different times:

(a)     <u>Possession</u>.  Mortgagee may enter upon and take possession of the Property; lease, rent and let the Property; and receive all the Rents, income, issues, and profits and apply the same to satisfy any Obligation.  Mortgagee is granted full power and authority to do any act or thing which Owner or its successors or assignees who may then own the Property might or could do in connection with the ownership, use, and maintenance of the Property.  This covenant becomes effective either with or without any action brought to foreclose upon the Property and without applying for a receiver of the Rents, if any.  Should the Rents or any part thereof be assigned without the consent of Mortgagee, then this Security Instrument will, at the option of Mortgagee, become due and payable immediately, anything herein contained to the contrary notwithstanding.

(b)     <u>Appointment of Receiver</u>.  Mortgagee may have a receiver of the Rents (including an Asset Administrator), income, issues, and profits of the Property appointed without the necessity of proving either the depreciation or the inadequacy of the value of the security or the insolvency of Owner or any other person who may be legally or equitably liable for the Obligations, and Owner and each such person waive such proof and consent to the appointment of a receiver.

(c)     <u>Fair Rental Payments</u>.  If Owner or any subsequent owner is occupying the Property or any part the Property, it is agreed that the occupants will pay Mortgagee the amount of rent requested by Mortgagee in advance each monthly, and for the use of personal property covered by this Security Instrument.

(d)     <u>Excess Monies</u>.  Mortgagee may apply on account of the unsatisfied Obligations owed to Mortgagee after a foreclosure sale of the Property, whether or not a deficiency action has or will be instituted, any unexpended monies still retained by Mortgagee that were paid by Owner to Mortgagee

or from the proceeds of such sale (i) for the payment of, or as security for, the payment of taxes, assessments, municipal or governmental rates, charges, impositions, liens, water or sewer rents, or insurance premiums, if any, or (ii) in order to secure the performance of some act by Owner.

(e)    Remedies at Law or Equity. Mortgagee may take any of the remedies otherwise available to it as a matter of law, equity or otherwise.

(f)    Statutory Power of Sale. To the extent permitted by applicable law:

(i)    Mortgagee will have the power to sell the Property at a nonjudicial foreclosure sale. In connection with the sale, Mortgagee may declare all performance and Obligations immediately due by delivery to Owner of a written declaration of default. Mortgagee will give notice of default to Owner prior to acceleration following an Event of Default. The notice will specify: (A) the default; (B) the action required to cure the Event of Default; (C) a date, not less than 30 days from the date the notice is given to Mortgagor, by which the Event of Default must be cured; and (D) that failure to cure the Event of Default on or before the date specified in the notice may result in acceleration of the performance and Obligations secured by this Security Instrument and sale of the Property. The notice will further inform Owner of any right to cure after acceleration and the right to bring a court action to assert the nonexistence of an Event of Default or any other defense of Owner to acceleration and sale, and any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other applicable law. If the Event of Default is not cured on or before the date specified in the notice, Hometap at its option may require immediate performance in full of all Obligations without further demand and may invoke the power of sale and any other available remedies not prohibited by applicable law. Hometap will be entitled to collect all costs, fees, and expenses incurred in pursuing the remedies provided in this Security Instrument, including legal fees and costs of title evidence.

(ii)    If Mortgagee invokes the power of sale, Mortgagee will execute a written notice of Mortgagee's election to cause the Property to be sold as may be prescribed by applicable law. Mortgagee will cause this notice to be recorded in each county in which any part of the Property is located. Mortgagee will mail copies of any notice required by applicable law to Owner and to the other persons required by applicable law. Mortgagee will give public notice of sale to the persons and in the manner as may be prescribed by applicable law.

(iii)    After the time required by applicable law, Mortgagee may sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Mortgagee determines. Mortgagee may postpone the sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.

(iv)    Mortgagee will deliver to the purchaser its deed conveying the property sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts will be conclusive proof of their truthfulness. Any person, including Owner or Mortgagee, may purchase at the sale.

(v)    After deducting all costs, fees, and expenses (including Legal Fees), including cost of evidence of title in connection with the sale, Mortgagee will apply the proceeds of the sale to payment of: first, to all sums expended under the terms of this Security Instrument, not then repaid, with accrued interest, if any, at the amount allowed by applicable law in effect on the Signing Date of this Security Instrument; second, to other sums then secured by this Security

Instrument and senior to Mortgagee's interest; third, the Hometap Share to Mortgagee; and fourth, the remainder, if any, to the person or persons legally entitled to it.

(vi)    Notice provided to Owner under this Security Instrument will be to the address specified in this Security Instrument unless otherwise required by applicable law.

(vii)    Exercise of Mortgagee's remedies under this Security Instrument will be in compliance with applicable law.

8.    Late Performance.    By accepting performance of any Obligation after its due date, Mortgagee does not waive its right either to require prompt performance when due of all other Obligations or to declare a breach or default for such failure to perform.

9.    Mortgagee's Powers.    At any time and from time to time, without liability and without notice, upon written request of Owner and presentation of this Security Instrument, and without affecting the personal liability of any person for the performance of the Obligations, Mortgagee may: (a) release any part of the Property; (b) consent to the making of any map or plat of the Property; (c) join in granting any easement on the Property; and (d) join in any extension agreement or any agreement subordinating the lien or charge of this Security Instrument.

10.    Successors.    This Security Instrument applies to, inures to the benefit of, and binds all parties to this Security Instrument, their heirs, legatees, devisees, administrators, executors, and permitted successors and assigns.    The terms **"Hometap"** or **"Beneficiary"** will include any successor or assign of Hometap's rights in the Option Agreement and in this Security Instrument, whether or not named as Hometap in this Security Instrument.    Absent Mortgagee's prior written consent, which consent may be withheld in its sole discretion, Owner may not assign or otherwise transfer this Security Instrument.

11.    Interpretation.    In this Security Instrument, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.    Also, in this Security Instrument, the term "include" or "including" means without limitation by reason of enumeration.

12.    Joint and Several Liability.    If more than one person signs this Security Instrument as Owner, the obligations of each signatory will be joint and several.

13.    Multiple Owners.    If there are multiple Owners of the Property:

(a)    this Security Instrument must be signed by each Owner;

(b)    all rights and powers specified for Owner in this Security Instrument must be approved and exercised unanimously by each Owner;

(c)    each Owner will be jointly and severally liable for all liabilities and Obligations;

(d)    notice required to be given by, or to, each Owner will be deemed adequately given if given by or to any Owner using the contact information set forth in this Security Instrument; and

(e)    Hometap may treat any notice received from any Owner as notice from all Owners.

14.    Incorporation by Reference.    Exhibit A to this Security Instrument is incorporated by this reference.

15.    Extent of Lien.  The lien granted under this Security Instrument will encumber Owner's entire interest in the Property, notwithstanding the fact that the Option Agreement relates to only a fractional interest in the Property.

16.    No Merger.  So long as any of the Obligations remain outstanding and undischarged, unless Mortgagee otherwise consents in writing, the fee estate of Owner in the Property or any part of the Property (including the estate of Mortgagee after exercising the Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Mortgagee or in any other person.

17.    Release.  Following satisfaction of all Obligations secured by this Security Instrument, including any payment of any amounts due and secured by this Security Instrument, Mortgagee will discharge this Security Instrument.  Owner will pay any recordation costs.  Mortgagee may charge Owner a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

18.    Subordination of Homestead and Waivers.  If Owner has acquired before the Signing Date or acquires on or after the Signing Date an estate of homestead in the Property, Owner agrees, to the fullest extent permitted by applicable law, that such homestead estate is subordinated in all respects to this Security Instrument and the amount of any Obligation owed and to all renewals, extensions, and modifications of any Hometap Homeowner Agreement, and that such homestead estate is subject to all of the rights of Mortgagee under the Option Agreement and all renewals, extensions, and modifications of the Option Agreement, and is subordinate to the lien evidenced by this Security Instrument and all renewals, extensions, and modifications of this Security Instrument.  Owner waives and relinquishes all rights of curtesy and dower in the Property.

19.    Notice of Option Purchase Agreement.  Mortgagor hereby provides notice that Mortgagor and Mortgagee have entered into the Option Agreement, as more particularly described in Exhibit B attached hereto and incorporated herein by this reference as if set forth in full. The Option Agreement contains certain covenants and promises to or for the benefit of Mortgagee. The Option Agreement is irrevocable by Mortgagor and expires on 02/21/2033. Every person or entity who now or hereafter owns or acquires any right, title or interest in or to any portion of the Property is and shall be conclusively deemed to have consented and agreed to every restriction, provision, covenant, right and limitation contained in the Option Agreement, whether or not such person or entity expressly assumes such obligations or whether or not any reference to the Option Agreement is contained in the instrument conveying such interest in the Property to such person or entity.

20.    Notices.  All notices or other written communications hereunder shall be delivered in accordance with the applicable terms and conditions of the Option Agreement. Notices shall be sent to the address of the other party listed below as follows, unless a party has been notified by the other party in writing of a substitute address:

**Hometap/Mortgagee:**

Hometap Investment Partners III SPV, LLC
800 Boylston Street, 16th Floor
Boston, MA 02199
Attention: Legal Department

**Owner/Mortgagor:**

Keicha Greenidge
 Ryan Prince Albert Billey and also known as Ryan P. Billey
6 Cherise Ct
Jackson Township, NJ 08527

*[Signature Pages Follow]*

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC, AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH HOMETAP, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, PRINTED MATERIALS, AND DISCLOSURES ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS SECURITY INSTRUMENT, THE OPTION AGREEMENT, AND THE INVESTMENT DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN MORTGAGOR AND MORTGAGEE AS OF THE EFFECTIVE DATE.

OWNER DECLARES THAT OWNER HAS READ THIS MORTGAGE AND SECURITY AGREEMENT, UNDERSTANDS IT, HAS RECEIVED A COMPLETELY FILLED-IN COPY OF IT WITHOUT CHARGE THEREFOR, AND HAS SIGNED IT AS OF THE SIGNING DATE.

The undersigned Owner(s) requests that a copy of any Notice of Default or Notice of Sale under this Security Instrument be mailed to the Owner at the Owner's address set forth in Section 20 above.

IN WITNESS WHEREOF, each undersigned Mortgagor has executed this Mortgage and Security Agreement under seal as of the Signing Date.

**MORTGAGORS:**

By: _____

Keicha Greenidge

Date: _____ 2/14/23

By: _____

Ryan Prince Albert Billey and also known as Ryan P. Billey

Date: _____ 2/14/23

Acknowledgment Certificate

State of New Jersey                )

                                   )ss

County of ___Ocean___,)

On __Feb 14__, 2023 before me, ___Robart Hall___, Notary Public in and for said county, personally appeared Keicha Greenidge who has satisfactorily identified him/her/themselves as the signer to the above referenced document.

___Robart Hall___

Print Notary Name

ROBERT HALL
NOTARY PUBLIC OF NEW JERSEY
Commission # 50143452
My Commission Expires 11/16/2025

(Affix Notary Stamp Here)

___RH Hall___
Notary Public Signature

___2/14/23___
Date

My Commission Expires:___11/16/2025___

<u>Acknowledgment Certificate</u>

State of New Jersey                )

                                   )ss

County of ___O(s^an___ ,)

On __2/14__ , 20_23_ before me, ___Robert Hall___ , Notary Public in and for said county, personally appeared   Ryan Prince Albert Billey and also known as Ryan P. Billey who has satisfactorily identified him/her/themselves as the signer to the above referenced document.

___Robert Hall___

Print Notary Name

> ROBERT HALL
> NOTARY PUBLIC OF NEW JERSEY
> Commission # 50143452
> My Commission Expires 11/16/2025

(Affix Notary Stamp Here)

_____
Notary Public Signature

___2/14/23___
Date

My Commission Expires:___11/16/2025___

## EXHIBIT A

## LEGAL DESCRIPTION

Real property described as follows:

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Jackson, in the County of Ocean, State of New Jersey:

Known and designated as Lot 4.05 Block 82.01 as shown on a certain Map entitled, "Final Plat/Major Subdivision of Autumn Breeze at Jackson, Lot 4.01 Block 82.01 Tax Map" filed in the Ocean County Clerk's Office on April 15, 2002 as Map No. L-3140.

Being further described as follows:

Beginning at a rebar with cap found on the Southwesterly sideline of Cherise Court (50' ROW), said point being the division line between Lots 4.05 and 4.04 on the aforementioned filed Map, and running, thence;

1) Along said sideline of Cherise Court, South 25 degrees 55 minutes 06 seconds East 209.05 feet to a point, thence;

2) Leaving said sideline of Cherise Court, South 64 degrees 04 minutes 54 seconds West 232.78 feet to a point, thence;

3) North 17 degrees 19 minutes 24 seconds West 211.43 feet to a rebar with cap found; thence

4) North 64 degrees 04 minutes 54 seconds East 201.18 feet to the point and place of Beginning.

Containing 45,361 S.F.

This description is drawn in accordance with a Survey performed by Lakeland Surveying, Inc. dated 09/07/2018

Parcel ID / APN: Block: 15801 Lot: 21

## EXHIBIT B

## NOTICE OF OPTION

This Notice of Option ("**Option Notice**") provides notice of the Option Purchase Agreement entered into as of 02/14/2023 ("**Signing Date**"), by and between Keicha Greenidge and Ryan P. Billey, married and Hometap ("**Option Agreement**"), and supplements the Security Instrument of the same date between the parties. Capitalized terms used in this Option Notice shall have the meanings specified herein, or if not defined herein, in the Option Agreement or the Security Instrument.

## RECITALS

A.    Mortgagor hereby declares that as of the Signing Date, Mortgagor and Mortgagee have entered into that certain unrecorded Option Agreement, which is hereby incorporated into this Option Notice as if set forth in full, pursuant to which Mortgagor grants and conveys to Mortgagee the option to purchase an undivided percentage interest of fee simple title ownership in and to the Property. In consideration for granting and conveying the Option to Mortgagee, Mortgagee paid to Mortgagor the Investment Amount. The Option is irrevocable by Mortgagor and expires on 02/21/2033.

B.    In the Option Agreement, Mortgagor has made certain covenants and promises to, or for the benefit of, Mortgagee in connection with the Option and the Property, all as more particularly described in and on the terms and conditions stated in the Option Agreement.

C.    Mortgagor has executed this Option Notice to give notice of the Option Agreement and certain rights and responsibilities of Mortgagor as to the Mortgagee, as well as the covenants and promises set forth in the Option Agreement that run with the land and will be binding upon any party who acquires Mortgagor's interest in the Property, so long as the Option Agreement has not expired or been terminated.

## TERMS

1.    <u>Notice</u>. Every person or entity who now or later owns or acquires any right, title, or interest in or to any portion of the Property is and shall be conclusively deemed to have consented and agreed to every restriction, provision, covenant, right, and limitation contained in the Option Agreement and this Option Notice, whether or not such person or entity expressly assumes such restrictions, provisions, covenants, rights, and limitations or whether or not any reference to the Option Agreement or this Option Notice is contained in the instrument conveying such interest in the Property to such person or entity.

2.    <u>Covenants</u>. The Option Agreement covenants are deemed to be covenants running with the land, so as to give it the broadest possible application, and include, without limitation:

(a)    Restrictions on Mortgagor's right to transfer the Property without giving proper written notice to Mortgagee and requirements that Mortgagor comply with specific sale procedures set forth in the Option Agreement;

(b)    Requirements that Mortgagor maintain insurance on the Property against certain hazards and risks;

(c)    Restrictions on Mortgagor's ability to increase the amount of debt to third parties secured by liens on the Property as specified in the Option Agreement;

(d)    Restrictions on the Mortgagor's ability to rent the Property;

(e)    Requirements that Mortgagor keep Property free of liens not approved by Mortgagee; and

(f)    Requirements that Mortgagor protect and maintain the Property.